IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION at CHATTANOOGA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| WINPAR HOSPITALITY | ) | |
| CHATTANOOGA, LLC, | ) | Case No. 07-11908 |
| | ) | Chapter 7 |
| Debtor | ) | Judge Cook |

**OBJECTION TO (I) MOTION TO COMPEL TURNOVER OF FUNDS OR IN THE ALTERNATIVE TO LIFT STAY AND (II) MOTION TO COMPROMISE AND SETTLE DISPUTE WITH UNITED STATES OF AMERICA**

Atlantic American Capital Group, LLC, Atlantic American Corporate Group, LLC, J. Patrick Michaels, Jr., Peter H. Collins, Robert Moreyra and Bradley A. Gordon (collectively referred to hereinafter as "Atlantic American"), secured creditors in the above-referenced case, hereby object to (I) the Motion to Compel Turnover of Funds or in the Alternative to Lift Stay, filed by the United States of America (Docket No. 50) ("Turnover Motion"), and (II) the Motion to Compromise and Settle Dispute with United States of America, filed by the Trustee (Docket No. 57) ("Settlement Motion"). In support of its objections, Atlantic American states as follows:

**CASE BACKGROUND**

1.   This case was commenced by voluntary petition filed by WinPar Hospitality Chattanooga, LLC (the "Debtor") on May 18, 2007. Upon information and belief, the Trustee was appointed on May 18, 2007.

2.   Atlantic American timely filed its secured claim in the amount of $2,500,000.00 on May 24, 2007, and its claim was assigned Claim Number 1. In its claim, Atlantic American asserted a security interest in the Debtor's real property located at 509 Riverfront Parkway, Chattanooga, Tennessee ("Atlantic American's Secured Claim"). No objection has been made to Atlantic American's claim.

399651-2

3. On or about April 2, 2008, the Trustee sold the Debtor's real property located at 509 Riverfront Parkway, Chattanooga, Tennessee for $7,200,000.00. Pursuant to the Order Allowing Sale Free and Clear of Lien of Atlantic American Capital Group, LLC, entered December 5, 2007 (Docket No. 34), Atlantic American's lien on the real property attached to the sale proceeds. No other creditor has a lien against the sale proceeds. No motion or adversary proceeding has been filed to avoid Atlantic American's lien.

4. The Trustee has represented that the estate retains a balance of sale proceeds of $7,094,764.68.

## PENDING, CONTESTED MOTIONS

5. On April 10, 2008, the Trustee filed a Motion to Pay Interim Dividends to Uncontested Claimants (Docket No. 40) ("Interim Dividend Motion"), in which the Trustee proposed to pay certain claims totaling $1,570,287.25, plus interest. On the same day, the Trustee also filed an Application for Interim Payment of Trustee's Commission (Docket No. 41). Atlantic American timely objected to both of the Trustee's motions by written objections filed April 30, 2008 (Docket Nos. 47 and 46, respectively), and in open court at the hearing on May 1, 2008. Atlantic American's objections are unresolved.

6. On April 30, 2008, Atlantic American filed its Objection to Claim Number 3, Filed by William Parsons (Docket No. 48). Atlantic American's Objection to William Parsons' claim is unresolved as of the filing of this pleading. William Parsons' Claim is one of the claims the Trustee proposes to pay in his Interim Dividend Motion.

7. On April 30, 2008, the United States filed its Turnover Motion. In its Turnover Motion, the United States seeks to enforce an order entered by the United States District Court for the Middle District of Florida requiring turnover of all of the $7,094,764.68 in sale proceeds ("Forfeiture Order"), or in the alternative, the United States seeks relief from the automatic stay

399651-2                                  2

Case 1:07-bk-11908   Doc 63   Filed 05/29/08   Entered 05/29/08 16:49:24   Desc Main
                          Document      Page 3 of 16

to pursue its forfeiture claims in the United States District Court for the Middle District of Florida ("Florida Forfeiture Action").[1]

8. Also on April 30, 2008, the Trustee filed against the United States of America a Complaint for Violation of Automatic Stay and for Injunctive Relief (Docket No. 52).

9. On May 12, 2008, the Trustee filed his Settlement Motion, in which he seeks Court approval of his settlement with the United States. The Trustee and the United States (the "Settling Parties") propose that the Court split the sale proceeds, all of which the United States claimed in it Turnover Motion to be subject to forfeiture. The Settling Parties propose that the Trustee keep $3,000,000, but turn over the remainder of the proceeds to the United States, notwithstanding Atlantic American's first-priority secured claim and lien against the entire amount of proceeds. The Settling Parties further propose that the Trustee be allowed to pay all the claims he proposed paying in his Interim Dividend Motion, notwithstanding the fact that Atlantic American's objections to payment of those claims remain unresolved and notwithstanding Atlantic American's first-priority secured claim and lien. Finally, the Settling Parties propose that Atlantic American be required to litigate its entitlement to payment from the sale proceeds in the Florida Forfeiture Action, again notwithstanding its first priority secured claim and lien against the entire amount of proceeds.

## LEGAL ARGUMENT

### I. SUMMARY

10. The automatic stay applies to the Florida Forfeiture Action and the Forfeiture Order. The Bankruptcy Court has exclusive jurisdiction over the United States' forfeiture

---

[1] According to the United States' Amended Verified Complaint for Forfeiture in Rem and supporting Affidavit, both of which are attached to Atlantic American's objection to the Interim Dividend Motion (Docket No. 47), only $3,031,287.06 in allegedly "dirty" funds were used to purchase the property, which was later sold in this case for $7,200,000.00. The United States seeks immediate forfeiture of the entire amount, notwithstanding the impact on creditors in this case.

399651-2                                3

claims, and the Forfeiture Order is void. There is no binding precedent that requires this Court to either turn over all of the sale proceeds to the United States, as the United States originally demanded in its Turnover Motion, or to split the sale proceeds and turn over more than half of the proceeds to the United States, as the United States and the Trustee have agreed in compromise to do. Both the Turnover Motion and the Settlement Motion should be denied.

II.     **THE AUTOMATIC STAY APPLIES TO THE UNITED STATES' FORFEITURE CLAIM; THUS, THE FORFEITURE ORDER IS VOID**

11.     Actions taken and orders entered in violation of the automatic stay are "invalid and voidable and shall be voided absent limited equitable circumstances." *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 911 (6th Cir. 1993). Those exceptional circumstances are limited to when the debtor unreasonably withheld notice of the stay, causing prejudice to the creditor, or when the debtor attempts to use the stay unfairly as a shield to avoid an unfavorable result. *Id.* Neither circumstance exists in this case. The Florida Forfeiture Action and the Forfeiture Order violate the automatic stay in 11 U.S.C. § 362, and the Forfeiture Order must be voided. *Id.*

12.     The United States relies on the "government police and regulatory powers exception" to the automatic stay set forth in 11 U.S.C. § 362(b)(4):

> (b) The filing of a petition under section 301, 302, or 303 of this title . . . does not operate as a stay –
>
> . . .
>
> (4) under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit or any organization exercising authority under the Convention on the Prohibition of the Development, Production, Stockpiling and Use of Chemical Weapons and on Their Destruction, opened for signature on January 13, 1993, to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce

> such governmental unit's or organization's police or regulatory power[.]

For this exception to apply, the United States must satisfy two tests: the pecuniary purpose test and the public policy test. *Chao v. Hospital Staffing Servs., Inc.*, 270 F.3d 374, 385 (6th Cir. 2001). These tests are described by the Sixth Circuit as follows:

> Under the pecuniary purpose test, reviewing courts focus on whether the governmental proceeding relates primarily to the protection of the government's pecuniary interest in the debtor's property, and not to matters of public safety. Those proceedings which relate primarily to matters of public safety are excepted from the stay. Under the public policy test, reviewing courts must distinguish between proceedings that adjudicate private rights and those that effectuate public policy. Those proceedings that effectuate a public policy are excepted from the stay.

*Id.* at 385-86 (quoting *In re Commerce Oil Co.*, 847 F.2d 291, 295 (6th Cir. 1988). The exception applies to "the enforcement of … laws affecting health, welfare, morals, and safety, but not regulatory laws that directly conflict with the control of the *res* or property by the bankruptcy court." *Id.* (quoting *Missouri v. Bankr. Court for the E.D. of Ark.*, 647 F.2d 768, 775 (8th Cir. 1981)). In other words, "an action will only be exempt from the automatic stay of the Bankruptcy Code if the action has been instituted to effectuate the public policy goals of the governmental entity, as opposed to actions instituted to protect the entity's pecuniary interest in the debtor's property or to adjudicate private rights." *Id.* (quoting the lower court).

13. In applying the tests, the Court should look beyond any policy purpose cited by the government, and determine whether that purpose is indeed driving the government's action or whether the government is actually motivated by its own pecuniary interest or by an effort to adjudicate private rights. *See Chao*, 270 F.3d at 388-394 (Sixth Circuit determined that "hot goods" injunction action by Department of Labor, which would typically be excepted from the automatic stay, was not excepted in the case before it because the Department of Labor was

attempting to force debtor to pay private claimants outside the distribution scheme of the Bankruptcy Code.). "[W]hen the action incidentally serves public interests but more substantially adjudicates private rights, courts should regard the suit as outside the police power exception, particularly when a successful suit would result in a pecuniary advantage to certain private parties vis-à-vis other creditors of the estate, contrary to the Bankruptcy Code's priorities." *Id.* at 390. The same principal applies if the government is the party obtaining a pecuniary advantage over other creditors, contrary to the Bankruptcy Code's priorities. *Id.* at 388-89.

14. In its Turnover Motion, the United States relies in part on *United States v. Ursery*, 518 U.S. 267 (1996), for the policy reasons behind federal forfeiture actions under 18 U.S.C. § 981. *Ursery* is not a bankruptcy case; instead, the key issue before the Supreme Court was whether civil forfeitures constitute "punishment" for purposes of the Double Jeopardy Clause. *Id.* at 270-71. Atlantic American does not deny that there are policy reasons for civil forfeitures, as cited by the United States in its Turnover Motion, including: "encourag[ing] property owners to take care in managing their property and ensur[ing] that they will not permit that property to be used for illegal purposes", *id.* at 290; abating a nuisance, *id.*; "ensuring that persons do not profit from their illegal acts", *id.* at 291; and a general deterrence against criminal acts, *id.* at 292. However, these policies are not served in this bankruptcy case. As the Sixth Circuit noted,

> [a]ll acts of Congress by definition declare national policy, and lawsuits to enforce those acts necessarily effectuate the public policy of the United States. [However], the public policy test calls upon courts to analyze whether *a particular lawsuit* is undertaken by a governmental entity in order to effectuate public policy or, instead, to adjudicate private rights.

399651-2                                  6

*Chao*, 270 F.3d at 389 (emphasis in original); *see also In re Goff*, 159 B.R. 33, 40 (Bankr. N.D. Okl. 1993)("Not all forfeiture actions are alike.  Therefore, not all forfeiture actions need be treated alike.").

15. By the time the United States commenced the Florida Forfeiture Action, the real property at issue had already been sold in this bankruptcy case and converted to cash.  Thus, policies of encouraging property owners to care for their property and not allow it to be used for illegal purposes or to abate a nuisance do not apply.

16. Further, the bad actors in the Florida Forfeiture Action are Frank Amodeo and Mirabilis Ventures, the sole owner of the Debtor, and by extension, the Debtor.  The Bankruptcy Code distribution priorities are adequate to ensure that none of these entities are paid in the bankruptcy case, thus also effectuating forfeiture policies.

17. First, the Debtor filed its chapter 7 bankruptcy petition over a year ago on May 18, 2007, subjecting its property to liquidation and distribution to creditors pursuant to the Bankruptcy Code.  Upon commencing this bankruptcy case, the Debtor gave up any interest in the property, except to the extent there are any surplus funds remaining after payment of all creditors.  *See* 11 U.S.C. § 726(a).  The forfeiture policy of not allowing criminals to profit from their illegal acts is only served in this particular case to the extent of the Debtor's entitlement to the surplus funds.  In this case, if the United States succeeds in obtaining a forfeiture judgment and claims are paid in accordance with the priorities of section 726(a), the Debtor would not receive any payment from the sale proceeds.  Sections 726(a)(4) and (6) of the Bankruptcy Code provide that the United States' forfeiture judgment would be paid before any surplus funds are returned to the Debtor.  Based on the known claims, including the United States' forfeiture claim, it does not appear that there would be any surplus funds.

18. Second, with regard to any claims by Mirabilis Ventures or other entities related to Frank Amodeo, their claims may be equitably subordinated to the claims of Atlantic American, unsecured creditors and the United States, pursuant to 11 U.S.C. § 510, or the Trustee or the United States may seek their disallowance for whatever wrongdoing is alleged in the forfeiture action. Thus, the policy of 18 U.S.C. § 981 of ensuring that criminals do not profit from their illegal acts is effectuated by the Bankruptcy Code claims allowance, subordination and distribution schemes.

19. Because it does not serve any policy interest, the United States' claim for forfeiture of the entire $7,094,764.68 in sale proceeds can only be intended for its own pecuniary advantage over other creditors or the pecuniary advantage of private parties over other creditors.

20. This case is analogous to the case before the Sixth Circuit in *Chao*. 270 F.3d 374. In *Chao*, the Secretary of Labor sought to enjoin the trustee from transporting certain of the debtor's records across state lines, pursuant to the "hot goods" provision of 29 U.S.C. § 215(a). *Id.* at 379. The Secretary claimed the records had been created by employees whom the debtor had not paid in accordance with federal wage laws. *Id.* Although acknowledging that "hot goods" actions might typically fall within the police and regulatory powers exception in section 362(b)(4), the Sixth Circuit carefully examined the facts of the case before it and determined that the Secretary's intent was to force the debtor to pay $616,158 to "purge the 'taint' from the allegedly hot goods" and to then use those funds to pay the class of debtor's employees who had not been paid minimum wage. *Id.* at 380, 382, 393-94. The Sixth Circuit found that the Secretary's action was not undertaken in furtherance of public policy, but to protect the private rights of certain individuals. *Id.* at 382, 389, 393-94. Therefore, the court held that the police power exception did not apply. *Id.* at 382, 394.

21.     Likewise, in this case, it is Atlantic American's understanding that, assuming it obtains forfeiture and turnover of the $7,094,764.68 in sale proceeds, the United States would deposit the money into a common "victims fund" from which victims of Frank Amodeo's criminal actions, if any, and other unrelated crimes may receive payment.  The United States is attempting to compensate private claimants outside the Bankruptcy Code's distribution scheme.  Therefore, under *Chao*, its forfeiture action is not excepted from the automatic stay. *Chao*, 270 F.3d at 382, 394.

22.     Only a few cases have addressed application of the automatic stay to forfeiture actions after Congress revised 11 U.S.C. § 362(b)(4) in 1998 to add actions under 362(a)(3) to those excepted from the automatic stay, and those cases are cited by the United States.  None of the holdings are binding on this Court.  Not only are the cases from outside the Sixth Circuit and this District, but the Sixth Circuit has made clear that the police and regulatory powers exception to the automatic stay is to be determined on a case-by-case basis with consideration of the particular facts and circumstances before the Court. *See Chao*, 270 F.3d at 389.  In particular, the *United States v. 45 Poquito Road* case cited by the United States, should not be followed by this Court because the Oregon court's analysis is inconsistent with Sixth Circuit authority. *United States v. 45 Poquito Road*, 2006 WL 2233645 (D. Or. Aug. 2, 2006).  Instead of examining the facts and circumstances in the case before it and deciding whether the government's action was actually intended to effectuate a public policy, the Oregon court simply made conclusory determinations that the primary purpose of the forfeiture statute is to punish and deter offenders and that the government's primary motives were to punish the wrongdoer and enforce a public policy of deterrence. *Id.* at *4.  The court did not carefully examine the particular facts of the case before it. *Id.*

23. As discussed above, in the Sixth Circuit the relevant point of inquiry for § 362(b)(4) is not determining the primary purpose of the particular statute that the government seeks to enforce, but determining whether the government is actually seeking to further that purpose or whether the government is seeking a pecuniary advantage for itself or private claimants outside the distribution scheme of the Bankruptcy Code. *See Chao*, 270 F.3d at 388-394. When the government's action more substantially adjudicates private rights, even if incidentally serving public interests, then the action is outside the police power exception to the automatic stay, particularly when a successful suit would result in some pecuniary advantage to one or a class of creditors vis-à-vis other creditors to the estate, contrary to the Bankruptcy Code's priorities. *Id.* at 390.

### III. THIS COURT HAS EXCLUSIVE JURISDICTION OVER THE UNITED STATES' CLAIM TO THE SALE PROCEEDS

24. When the automatic stay applies to an action directed at the debtor or its property, the bankruptcy court has exclusive jurisdiction of that action. *Chao*, 270 F.3d at 383; 28 U.S.C. § 1334(e); 28 U.S.C. § 157(a). By extension, other courts have no jurisdiction as to actions governed by the automatic stay, unless the stay is lifted by the bankruptcy court. *Id.* at 384. If the non-bankruptcy court makes its own determination that the automatic stay does not apply, and that decision is wrong, the entire action may be declared void *ab initio*. *Id.*

25. In this case, the Florida district court made no determination regarding the application of the automatic stay before entering its Forfeiture Order. As discussed above, the automatic stay applies to the Florida Forfeiture Action because the United States primarily is seeking its own pecuniary advantage, even if its forfeiture claim may incidentally serve some government policies. Since the stay applies, the Florida district court lacked jurisdiction over the United States' claim to the sale proceeds, and the Forfeiture Order is void.

26. This Court should retain exclusive jurisdiction over the United States' claim of an interest in the sale proceeds, and deny the United States' motion to lift the automatic stay. The forfeiture claim is no more than a determination of a party's interest in property of the estate, which is a core proceeding. 28 U.S.C. § 157(b)(2)(B). Bankruptcy Courts have plenary power over core proceedings. *Marshall v. Marshall*, 547 U.S. 293, 303, 126 S.Ct. 1735, 1743 (2006). The fact that the forfeiture claim relies on non-bankruptcy law does not require the Bankruptcy Court to abstain from determining it. Generally, property interests are created and defined by state law. *Butner v. U.S.*, 440 U.S. 48, 55, 99 S.Ct. 914, 918 (1979). Thus, bankruptcy courts routinely examine non-bankruptcy law in determining whether property is property of the estate. *See, e.g., U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 211, 103 S.Ct. 2309, 2316-17 (1983)(holding that property seized by the IRS immediately prior to the filing of debtor's chapter 11 petition is property of the estate, subject to turnover demand by the trustee); *Burgess v. Sikes (In re Burgess)*, 438 F.3d 493 (5th Cir. 2006)(examining debtor's right to receive federal crop disaster payments and whether the right was property of the estate); *In re Newpower*, 233 F.3d 922 (6th Cir. 2000)(examining estate's interest in property embezzled by debtor).

27. To the extent the United States argues that, under the relation-back principals of the forfeiture statute, the United States' claim to the property relates back to the purchase date and, therefore, the property never became property of the estate, the Bankruptcy Court has exclusive jurisdiction to make that determination. It is simply part of the determination of whether the property is property of the estate.[2]

---

[2] Just because the government asserts forfeiture rights does not make this contest anything other than a garden variety claim dispute. This Court routinely decides competing claims of interests in property, including the extent, validity and priority of liens or other claimed interests. This is simply a dispute over which party has the superior interest in property and, therefore, the allowable claim to the sale proceeds.

399651-2       11

## IV. THE PROPOSED SETTLEMENT IS CONTRARY TO THE DISTRIBUTION SCHEME IN THE BANKRUPTCY CODE AND IT CANNOT BE APPROVED

28. Atlantic American incorporates by reference: (i) its Objection to the Interim Dividend Motion (Docket No. 47); (ii) its Objection to the Application for Interim Payment of Trustee's Commission (Docket No. 46); and (iii) its Objection to the Claim of Williams Parsons, (Docket No. 48). All of these objections directly relate to the Settlement Motion, and all remain unresolved.

29. Atlantic American has a first priority secured claim in the sale proceeds. According to the Bankruptcy Code, Atlantic American is entitled to payment of its claim in full from the sale proceeds prior to payment of any unsecured claims, prior to payment of any commission to the Trustee, and prior to payment of compensation to counsel for the Trustee. *See* 11 U.S.C. §§ 506, 726(a). The Settling Parties offer no legal authority for their plan to pay unsecured claims and administrative claims ahead of Atlantic American's secured claim, nor can they.

30. The Trustee's settlement with the United States circumvents the Bankruptcy Code's distribution scheme by proposing to pay administrative and unsecured claimants ahead of Atlantic American's secured claim. This settlement proposal is contrary to sections 506 and 726(a) of the Bankruptcy Code. The Court has no authority to approve a settlement that is contrary to the Bankruptcy Code.

31. By proposing to split the proceeds and pay unsecured creditors without first paying Atlantic American's secured claim, the Settling Parties are essentially proposing that the Court strip Atlantic American's lien against the $3,000,000 in sale proceeds that the Trustee would retain, without any party first filing an objection to Atlantic American's claim or an adversary proceeding to avoid the lien and the Court ruling on same.

32.     Further, the Settling Parties propose the Court abandon jurisdiction over $4,000,000 plus in estate assets by handing that amount over to the United States in Orlando.[3] By doing so, the Court would also be abandoning jurisdiction over Atlantic American's secured claim, and forcing Atlantic American to litigate its claim in the Florida Forfeiture Action according to a non-bankruptcy standard for allowance or disallowance. Atlantic American would be limited to a maximum of $4,000,000 in payment of its secured claim. The Settling Parties provide no assurance that this amount will cover Atlantic American's entire claim, including interest and attorneys' fees, which are increasing and will continue to increase in the Florida Forfeiture Action. At present, Atlantic American has a lien against all $7,094,764.68 in sale proceeds to the full extent of Atlantic American's claim. By limiting Atlantic American to a maximum recovery of $4,000,000, the Trustees' proposal would partially strip Atlantic American's lien as to the entire $7,094,764.68 in sale proceeds without the Bankruptcy Court first making any determination of claim allowance or lien avoidance under 11 U.S.C. §§ 502, 506 or other applicable avoidance section of the Bankruptcy Code. It is prejudicial to limit Atlantic American's recovery to $4,000,000 at this time in response to the Settlement Motion.

**V.    CONCLUSION**

33.     The Florida Forfeiture Action violates the automatic stay; therefore, the Forfeiture Order is void. The Court has and should retain exclusive jurisdiction over the United States' forfeiture claim as it is simply a claim against property of the estate, which is a core proceeding. The Court should deny the United States' Turnover Motion.

34.     The Settlement Motion likewise must be denied. Atlantic American's claim and lien should be governed by and paid in accordance with the Bankruptcy Code, along with the

---

[3] The Trustee proposes giving the money to the United States in Florida. If any money is released from the Bankruptcy Court's jurisdiction, it should only be given to the Florida District Court, to be held pending entry of judgment in the forfeiture action.

399651-2                                        13

Trustee's claims for compensation, the unsecured creditors' claims, and the United States' claim. No claim should be paid with sale proceeds ahead of Atlantic American's secured claim and with disregard to Atlantic American's first-priority lien, at least not until this Court has considered and determined the allowance of such claim. There is no authority in the Bankruptcy Code for doing so.

WHEREFORE, Atlantic American respectfully requests that the Court deny the United States' Turnover Motion, deny the Settlement Motion, and grant such other relief as is appropriate and just.

>Respectfully submitted,
>
>HARWELL HOWARD HYNE
>GABBERT & MANNER, P.C.
>
>/s/ Craig V. Gabbert, Jr.
>Craig V. Gabbert, Jr.
>315 Deaderick Street, Suite 1800
>Nashville, Tennessee 37238
>Telephone: (615) 256-0500
>Facsimile: (615) 251-1058
>Email: cvg@h3gm.com
>
>*Counsel for Creditors: Atlantic American Capital Group, LLC, Atlantic American Corporate Group, LLC, J. Patrick Michaels, Jr., Peter H. Collins, Robert Moreyra and Bradley A. Gordon*

**CERTIFICATE OF SERVICE**

    I certify that a true and correct copy of the foregoing pleading was served electronically by CM/ECF to the following persons:

    U.S. Trustee
    Brian Smith (Debtor's counsel)
    Richard P. Jahn, Jr. (the Trustee)
    Kent Anderson (Assistant U.S. Attorney)
    Theresa Light Critchfield
    Nicholas W. Whittenburg

and by U.S. Mail to the persons on the attached service list on this 29th day of May 2008.

                                          /s/ Craig V. Gabbert, Jr.
                                          Craig V. Gabbert, Jr.

## SERVICE LIST

AQMI Strategy Corp.
200 S. Orange Avenue
Orlando, FL 32801

AQMI Strategy Corp.
2875 S. Orange Avenue, Suite 500
Orlando, FL 32806

Baker, Donelson
1800 Republic Centre
623 Chestnut Street
Chattanooga, TN 37450

City of Chattanooga
1000 Lindsay Street
Chattanooga, TN 37402-4233

Hamilton County Delinquent Tax Office
625 Georgia Avenue, Room 210
Chattanooga, TN 37402

Hamilton County Herald
c/o Fleischmann & Fleischmann
735 Broad Street, Suite 1000
Chattanooga, TN 37402

Hamilton County Trustee
P.O. Box 11047
Chattanooga, TN 37401

John Haslip
1192 Patomac Drive
Merit Island, FL 32952

LEIG Group
10033 North Fort Washington Road, Suite 200
Mequon, WI 53092

Harry R. Cash
Grant, Konvalinka & Harrison, P.C.
633 Chestnut Street, 9th Floor
Chattanooga, TN 37450
(*counsel for:*
MRW Marketing, Inc.
Chattanooga Development, LLC
Donald A. Lee
Wakulla Suites, Inc.
William Parsons)

Mirabilis Ventures, Inc.
PO Box 4916
Orlando, FL 32802

NEXIA Strategy Corp.
P. O. Box 4916
Orlando, FL 32802

Presidion Solutions, Inc.
2875 S. Orange Avenue, Suite 500
Orlando, FL 32806

River City Company
850 Market Street
Chattanooga, TN 37402

River Street Architecture
David F. Hensley, Esq.
837 Fort Wood Street
Chattanooga, TN 37403

Sebastian
99 Georgia King Blvd.
Cape Canavaral, FL 32920

Titamium Technologies, Inc.
2875 S. Orange Avenue, Suite 500
Orlando, FL 32806

Whitney & Whitney, Inc.
William H. Whitney
2876 Anchor Avenue
Los Angeles, CA 90064

Roger Fitch
Hazlett, Lewis & Bieter, PLLC
537 Market Street, Suite 300
Chattanooga, TN 37402-1239

Mirabilis Ventures, Inc.
200 S. Orange Avenue, Suite 2800
Orlando, FL 32801

NEXI Strategy Corp.
200 S. Orange Avenue, Suite 200
Orlando, FL 32801

Presidion Solutions, Inc.
1861 N. Federal Highway, Suite 158
Hollywood, FL 33020