UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 7 |
| | ) | |
| WINPAR HOSPITALITY CHATTANOOGA, LLC | ) ) | Case No. 07-11908 |
| | ) | |
| Debtor. | ) | |

| | | |
|---|---|---|
| RICHARD P. JAHN, JR., TRUSTEE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | A.P. No. _____ |
| | ) | |
| ATLANTIC AMERICAN CAPITAL GROUP, LLC; ATLANTIC AMERICAN CORPORATE GROUP, LLC; J. PATRICK MICHAELS, JR.; PETER H. COLLINS; ROBERT MOREYRA; AND BRADLEY A. GORDON. | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## **COMPLAINT TO SET ASIDE FRAUDULENT CONVEYANCES, AVOID LIEN AND TO STRIKE CLAIM**

Plaintiff Richard P. Jahn, Jr. (the "Trustee" or "Plaintiff"), is the Chapter 7 Trustee for the above-captioned debtor, WinPar Hospitality Chattanooga, LLC ("WinPar" or the "Debtor"). He hereby sues the defendants and alleges, upon information and belief, as follows:

### **Nature of the Action**

1. This is an adversary proceeding brought pursuant to §§ 544, 548, and 550 of Title 11 of the United States Code (the "Bankruptcy Code"), Title 66, Chapter 3 of the

Tennessee Code Annotated, and Rule 7001 of the Federal Rules of Bankruptcy Procedure. This action seeks to avoid fraudulent conveyances and other relief.

2. This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. §§ 1334 and 157.

3. Venue is proper in this district and division under 28 U.S.C. § 1409.

4. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H) and (K).

5. The Debtor is a Florida limited liability company established on October 14, 2004. The Debtor has its principal place of business in Orange County, Florida.

6. On May 18, 2007, the Debtor filed a voluntary petition for liquidation under Chapter 7 of the Bankruptcy Code.

7. Richard P. Jahn, Jr. was appointed Trustee in this Chapter 7 on or about May 18, 2007.

8. Mirabilis Ventures, Inc. ("Mirabilis") is a Nevada corporation with its principal place of business in Orlando, Orange County, Florida. The Debtor is a wholly owned subsidiary of Mirabilis.

9. The Defendant Atlantic American Capital Group, LLC ("Atlantic Capital") is a Delaware limited liability company with its principal place of business in Tampa, Florida.

10. Atlantic American Capital Advisors, LLC ("AACA") is a Delaware Limited Liability Company with principal place of business in Tampa, Florida. At all times material it was a securities broker-dealer, duly licensed by the Securities and Exchange Commission.

2

11. Prior to October 2006, AACA was 100% owned by Defendant Atlantic Capital.

12. The Defendant Atlantic American Corporate Group, LLC ("Atlantic Corporate") is a Delaware limited liability company with its principal place of business in Tampa, Florida. It owned 100% of the membership units in Atlantic Capital prior to October, 2006.

13. Atlantic Corporate in turn is 100% owned by four individuals who are defendants in the case: J. Patrick Michaels, Jr. ("Michaels"), Peter H. Collins ("Collins"), Robert Moreyra ("Moreyra") and Bradley A. Gordon ("Gordon"). All are residents of the state of Florida.

14. Prior to March, 2006 several Florida developers had believed that a certain tract of land in Chattanooga located at 506 Riverfront Parkway would make an excellent site for development. The property was a vacant, 5.6 acre tract located on the banks of the Tennessee River just downstream of Chattanooga's public docks. These men planned a commercial development that would consist of a hotel, condominiums and marina.

15. These developers had done extensive site plans and market research in addition to obtaining many government permits required for the plan. They formed WinPar and had a contract to purchase the property from its owner that was due to close in late March, 2006.

16. A short time before closing, the developers learned that their financing source was no longer available. They contacted Mirabilis, and it agreed to finance the purchase of the property and develop it.

17. In late March, 2006 the debtor purchased the property in Chattanooga for $3.2 million. By agreement with the developers, Mirabilis became the sole member of the Debtor. The Riverfront Parkway tract was free and clear of liens, as all funds for the purchase had been advanced by Mirabilis or one of its subsidiaries.

18. As part of its agreement with the developers, Mirabilis authorized the Debtor to execute notes to certain investors and the developers in the amount of approximately $1.5 million. These notes reflected the time and expenses incurred by the developers in locating the property and planning the project.

19. Some of the developers stayed on the project thereafter. They hired more work to be done by architects, engineers and attorneys. Mirabilis funded the Debtor to the amount of approximately $200,000.00 during the summer of 2006 to pay for development costs. In addition, various vendors had performed services for the Debtor but were unpaid at least $100,000.00 during the summer of 2006. The Debtor's only source of income at this time came from advances by Mirabilis.

20. By October 2006 WinPar had unsecured creditors of at least $2.0 million.

21. On October 5, 2006 Mirabilis entered into a peculiar agreement in Florida to loan an entity called Argent BD, LLC ("Argent") a total of $5 million. Argent is a Florida limited liability company. The purpose of the loan was to enable Argent to purchase AACA from the Defendants. Under the agreement Mirabilis was to loan Argent $3 million for it to purchase AACA and another $2 million for its payroll needs thereafter.

22. Mirabilis had also capriciously agreed with Defendants to give them security to ensure that it would make the loan. It deeded Defendants Collins and Moreyra,

4

through their LLC, a building in Tampa, Florida with $1.4 million in equity. It caused the Debtor WinPar to issue a guaranty to the Defendants for $2.5 million, and the guaranty was secured with a Deed of Trust on WinPar's land. Mirabilis also advanced $500,000.00 in cash at closing to Argent, and this was paid over to the Defendants.

23. WinPar received no benefit, direct or indirect, from the execution of the guaranty. Likewise, it received no benefit for granting the deed of trust on its property at 506 Riverfront Parkway. This deed was recorded at Book 8110, Page 954 in the Registers Office of Hamilton County, Tennessee on October 10, 2006. This land was its sole asset.

24. After the closing of the loan agreement with Argent, Mirabilis abruptly ceased funding WinPar's operations. WinPar ceased all business thereafter. It had no employees, no income source, and its development plans were halted.

25. At the time it was made to give its guaranty and deed of trust to the Defendants, the Debtor could not pay its debts as they became due. It was balance sheet and equitably insolvent.

26. Mirabilis did advance about $300,000.00 to Argent after the closing to fund AACA's payroll. However, it failed to loan further funds to Argent as agreed under the loan agreement. Argent defaulted in paying the remaining purchase price for AACA to the Defendants.

27. Argent BD was at all times owned, directly or indirectly, by the Defendants Collins and Moreyra. Mirabilis never owned it. At no time did Mirabilis receive any income or benefits from Argent BD or AACA. At no time did Mirabilis exercise control over AACA. It operated under the direction of the Defendants with the same employees just as it had done before the loan agreement.

5

28.    The Defendants gave no real consideration in the sale of AACA to Argent. It was a sham transaction. They have retained AACA in their possession or control and retained all income and benefits of its ownership, just as before October 5, 2006. They have not attempted to reconvey AACA back to Atlantic Capital, nor have they sought to recover against Argent. They have suffered no net damages due to the breach of loan agreement by Mirabilis, and they are not entitled to any secured or unsecured claim against the estate.

29.    Even though Mirabilis had advanced over $2 million in funds and property to the Defendants and received nothing, they nonetheless sought to enforce their guaranty and deed of trust against the Debtor. In May of 2007 the Defendants instituted foreclosure proceedings against WinPar's land. They intended to recover $2.5 million of the amount which they claimed was still to be loaned by Mirabilis to Argent. Just minutes prior to the scheduled foreclosure, the Debtor filed this Chapter 7 petition on May 18, 2007, halting the sale.

30.    The defendants filed claim No. 1 in WinPar's bankruptcy proceeding in the amount of $2.5 million, secured.

## Count I

### Fraudulent Transfers Received by Defendants under 11 U.S.C. §548

31.    The Trustee alleges that the Debtor received no benefit or consideration, direct or indirect, from the execution of the guaranty and deed of trust in favor of Atlantic Capital on October 5, 2006. The Trustee further alleges that these transfers caused the Debtor to become insolvent and left it with unreasonably small capital with which to operate.

6

32. At the time of the transfers to Atlantic Capital, the Debtor owed approximately $2 million to unsecured creditors. The Debtor received less than a reasonably equivalent value for the transfers. The transfers were fraudulent as to these creditors, and they are avoidable by the Trustee under §548 of the Bankruptcy Code. They in turn are recoverable for the benefit of the estate under §550 of the Code.

## Count II

### Fraudulent Transfers Received By Defendants

### Under 11 U.S.C. §544(b) and TCA §§66-3-301 *et seq*.

33. The Trustee further alleges that:

   a. Less than a year prior to the petition date Debtor transferred to or for the benefit of the Defendants the Deed of Trust and the guaranty ("transfers").

   b. The Debtor received no fair consideration in exchange for the transfers.

   c. The Debtor was insolvent continuously thereafter.

   d. There is at least one actual holder of an allowed unsecured claim pursuant to 11 U.S.C. **§**502 who would have standing to assert a claim for relief under the under the Tennessee Uniform Fraudulent Transfer Act ("TUFTA").

34. The transfers are avoidable under TCA §§66-3-305, 3-306 and 3-308(a)(1), made applicable to this action under 11 U.S.C. **§**544(b).

## Count III

### Unclean Hands

The Trustee further alleges that the Defendants have unclean hands in connection with the Mirabilis loan and AACA purchase of October 5, 2006. The loan agreement and guaranty are unenforceable against the Debtor.

WHEREFORE, the Trustee prays as follows:

1. That the Court avoid the Debtor's execution of the guaranty to Atlantic Capital in October, 2006.

2. That the Court avoid the Deed of Trust granted by the Debtor in October, 2006 on its land at 506 Riverfront Parkway, Chattanooga, Tennessee.

3. That the avoided transfers be preserved for the benefit of the estate.

4. That the Court strike the claim of the defendants in the amount of $2,500,000.00 in its entirety and declare it to be unenforceable and forfeited.

5. That alternatively the Court require the Defendants to prove their net damages, if any, from any breach of contract over the sale of AACA, with only net damages to be allowed as a claim against the estate.

6. Grant the Trustee general and equitable relief.

Respectfully submitted,

/s/ Richard P. Jahn, Jr.
Richard P. Jahn, Jr., BPR #01435
1200 Mountain Creek Road, Suite 160
Chattanooga, TN 37405
Attorney for Trustee
Ph. (423) 870-2125
Fax. (423) 870-2129