# IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TENNESSEE
## SOUTHERN DIVISION at CHATTANOOGA

| | | |
|---|---|---|
| IN RE: | ) | |
| **WINPAR HOSPITALITY** | ) | NO. 07-11908 |
| **CHATTANOOGA, LLC** | ) | |
| | ) | CHAPTER 7 |
| | ) | |
| **Debtor(s).** | ) | |

### RESPONSE TO FEE OBJECTION OF THE UNITED STATES

Comes now Richard P. Jahn, Jr., Attorney for the Trustee, and responds to the objection to his fee request from the United States:

1. The United States has no standing to object to the Trustee's attorney fee request. It is not a party in interest. It has filed no claim in this action. It has no lien on any assets. It has not acquired any rights to date in the Mirabilis equity interest. At this time it has not been given any special right to the funds on hand. The stay has not been lifted in its favor.

2. The only parties with standing to object to these fees are the unsecured creditors and Mirabilis Ventures, Inc. Neither have any objections.

3. The objection from the United States is self-serving because it is a defendant in litigation brought by the estate. It has objected to only those parts of the fees that deal with this suit, AP 08-1149. Of the fees sought, 15% pertain to this litigation with the United States.

4. This attorney would show that if the United States believed that it had a right or a claim to the funds in this estate, it should have filed appropriate claims or pleadings as any party has a right to do, without more. Instead, it sought to seize and

arrest the funds in the bank account of the Trustee by force of process issued by foreign courts. It has obtained two separate seizure orders for these funds from a federal court in Florida, and it has constantly threatened to carry this out. Attorney action has been necessary and is still necessary to protect this estate from being dismantled by the United States.

    5.    The logic of the United States to carry out this unprecedented action appears to be this:

    a)    The Bankruptcy Code allows police power actions post-petition against the debtor.

    b)    A forfeiture action is police power.

    c)    Therefore, the United States can seize the funds in the hands of the Trustee through a forfeiture action.

    6.    The fallacy in the argument is that a forfeiture action cannot be maintained in the absence of possession or control of the funds sought to be seized. The Florida court has no such possession and never has; therefore, it lacks jurisdiction to issue the seizure orders.

    7.    The United States knew full well that if it brought an improper police power action against the estate without getting the stay lifted, it did so at its peril. <u>Chao v. Hospital Staffing Services, Inc</u>., 270 F3d 374, 384 (6th Cir. 2001) ("if the non-bankruptcy court's initial jurisdictional determination is erroneous, the parties run the risk that the entire action later will be declared void *ab initio*.")

    8.    The events given rise to AP 08-1149 resemble a divorce case. The parties are the only ones who really know what went on behind their closed doors. The Trustee

disputes the innocent-sounding statements of the United States that it never really would have seized the funds in the Trustee's hands. It drew first blood on May 1st, when it was seconds away from serving the first warrant on the Trustee in the courtroom. Judge Stinnett prohibited the service. It has never withdrawn the troops at the door. It has never dismissed the forfeiture actions and the arrest warrants it holds. Likewise, the notion that the unsecured creditors gave up their rights to their 100% distribution at arms length is unfounded, and they and the Trustee will so testify. The United States told them its second seizure was "even more powerful than the first", and they better take 80% now or they would probably get nothing. The creditors of a bankruptcy estate are not supposed to be subjected to such a threat from an outsider.

9. The Trustee has moved for summary judgment against the United States, so his case and reasoning and authorities are on record for all to see. The attorney believes that his case has merit. The law provides that only a Trustee can sue for violations of the automatic stay. When an outside party twice tries to seize the very assets of the estate out of the court's hands, and warns the unsecureds that they will likely get nothing if it decides to act, the bullying party should expect to get sued. This appears to be a gross, willful violation of the stay.

10. Is the United States so foolish that it expects the Trustee's attorney to capitulate and do nothing? It is this attorney's duty to protect the estate and, in good measure, the integrity of the court.  The phrase that "all that is necessary for the triumph of evil is that good men do nothing" is applicable here.

11. This is an interim fee request.  Attorney fees are reviewable by the court at anytime prior to the close of the case.

12. The attorney for the Trustee actually is working to put a lot of Winpar's money eventually into the hands of the United States. (It does not understand this). The United States should pay the damages it has caused the estate and let the attorney for the Trustee work to defeat Atlantic's claim. If this is done, most of Winpar's funds appear to be headed to the government through the Mirabilis estate, without its obsessive need to seize.

13. The objection of the United States should be denied for the reasons set forth above.

Respectfully submitted,

By: /s/ Richard P. Jahn, Jr.
Richard P. Jahn, Jr., BPR #01435
Attorney for the Trustee
1200 Mountain Creek Road, Ste. 160
Chattanooga, T N 37405
Ph: (423) 870-2125, Fax: (423) 870-2129
rjahn@jahnlegal.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing Response to Fee Objection was served upon the U.S. Trustee and M. Kent Anderson by ECF, this 16th day of January, 2009.

/s/ Richard P. Jahn, Jr.